798 F.2d 1408
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Connie M. BORDNER, Appellant,
v.
MUTUAL ASSURANCE SOCIETY OF VIRGINIA, Appellee.
 No. 85-2114.
 United States Court of Appeals, Fourth Circuit.
 Argued July 17, 1986.
Decided Aug. 26, 1986.
 
 Randall G. Johnson (Hill, Tucker & Marsh on brief), for appellant.
 Margaret I. Bacigal (Samuel W. Hixon, III and Lynn F. Jacob; Williams, Mullen & Christian, P.C. on brief), for appellee.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE and CHAPMAN, Ciruit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Connie M. Bordner brought this action against her employer, the Mutual Assurance Society of Virginia under the Equal Pay Act of 1963, 42 U.S.C. § 206(d) (1982). She alleged that Mutual had discriminated against her by paying her a lower salary than that paid to a male employee in a substantially equal job. After Bordner presented her case, the district court dismissed it pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, finding that she had shown no right to relief. Bordner appeals and we affirm.
 
 
 2
 Mutual is a small insurance company with six employees. Mutual hired James Cunningham, a male, as a "senior underwriter" in March 1981. Bordner, a female, was hired as an underwriter on January 3, 1983. There is no question but that Cunningham's starting salary was greater than Bordner's starting salary and, although both received periodic increases, the difference in their salaries remained approximately the same for the entire period of their employment, up to and including the time the suit was filed. On January 1, 1985, Cunningham earned $29,400 annually while Bordner's annual salary was $21,800.
 
 
 3
 Linwood Roach became the president of Mutual in 1981. At that time, he anticipated that the company would grow, and he decided to employ a senior underwriter to supervise the other underwriters and perform various executive functions, including counseling with Roach on underwriting policies and visiting Mutual's independent agents to review their production. Not long after Cunningham was employed, and before Bordner was hired, Roach implemented this policy by drafting job descriptions which included the description of the senior underwriter as an executive official. As a matter of practice, however, many of the executive functions assigned to Cunningham continued to be carried out by Roach, since the company remained small. Bordner's evidence reflected that she and Cunningham, under these circumstances, performed much of the same work. Never theless, there were differences, and there is no question that Roach expected Cunningham to assume an increasing number of executive responsibilities. Roach' § performance appraisals of both Bordner and Cunningham indicate that he directed them to modify their work behaviors to more effectively implement their respective roles as detailed in their job descriptions. We agree with the district court "there is no factual basis either by inference or the direct testimony that would entitle this plaintiff to recover" for discriminatory wages based on her sex.
 
 
 4
 The judgment of the district court, therefore, is affirmed. AFFIRMED.